516 A.2d 1191

Robert C. NAGLE, Appellant,

v.

ALLSTATE INSURANCE COMPANY.

Superior Court of Pennsylvania.

Submitted June 2, 1986.

Filed Oct. 20, 1986.

Donald F. Smith, Jr., Reading, for appellant.

James M. Lillis, Reading, for appellee.

Before WICKERSHAM, JOHNSON and WATKINS, JJ.

WICKERSHAM, Judge:

In July of 1976 plaintiff-appellant Robert C. Nagle was injured in an accident when he was attempting to attach an automobile to a tow truck. The automobile was struck from behind by a vehicle operated by one Jeffrey T. Shealer, an employee of Tecnad Enterprises. The vehicle operated by Shealer was owned by Larry J. Weller, but was allegedly being operated without permission.

Appellant, who was at the time a member of his father's household (Charles F. Nagle) requested uninsured motorist benefits from appellee Allstate Insurance Company, which insured Charles's vehicles.[1] Allstate refused to submit to arbitration or to appoint an arbitrator, and denied any uninsured motorist benefits to appellant. The lower court, by the Honorable W. Richard Eshelman, denied a petition to compel Allstate to submit appellant's claim for uninsured motorist benefits to arbitration.[2] This appeal followed, and the issue is stated as:

III. Whether Robert C. Nagle is entitled to have his claim for uninsured motorist benefits arbitrated as

---

1. Appellant instituted suit against Shealer, Weller, and Tecnad. Shealer was denied coverage by his own insurer as well as by the insurer for the Weller vehicle. Because of the denial of coverage to Shealer, appellant claimed uninsured motorist benefits from appellee Allstate. Without the consent of Allstate, appellant entered into a settlement with Weller and Tecnad. The case proceeded against Shealer, and a judgment was eventually obtained against him.

2. The Petition to compel Arbitration provided:
   1. That [appellant] is an individual who resides at 914 Hearthstone Lane, Sinking Spring, Berks County, Pennsylvania.
   2. That the Defendant, Allstate Insurance Company (hereinafter referred to as "Allstate") is an insurance company with a principal office located at the Sears Department Store, Berkshire Mall, Woodland Road, Wyomissing, Berks County, Pennsylvania.
   3. That the Defendant is engaged in the Commonwealth of Pennsylvania in the business of writing insurance and issuing insurance policies and entering into insurance contracts, and specifically engages in the business of insuring individuals under uninsured motorist coverage.
   4. That on or about July 24, 1976, your Petitioner was attaching a 1967 Pontiac Station Wagon to a tow truck on Lancaster Avenue, Reading, Berks County, Pennsylvania, at the intersection with the West Shore Bypass.

5. That at the aforesaid time and place, an automobile driven by Jeffrey Thomas Shealer collided with the rear of the aforesaid 1967 Pontiac, thereby causing it to collide with your Petitioner which resulted in serious injuries to him.

6. That at the time of the aforesaid collision, Jeffrey T. Shealer was an insured under an automobile liability policy issued by Aetna Casualty and Surety Company.

7. That the Aetna Casualty and Surety Company has denied coverage to Jeffrey T. Shealer for the aforesaid collision, but a suit concerning Aetna's denial of coverage is pending before this Court at No. 375 April, 1983 and the issue of coverage being provided by Aetna has not yet been resolved.

8. That at the time of the aforesaid collision, your Petitioner resided with his father, Charles F. Nagle, at 321 Pershing Boulevard, Reading, Berks County, Pennsylvania.

9. That on the date of the aforesaid collision, Charles F. Nagle had an automobile insurance policy with Allstate on three vehicles. This policy provided Fifteen Thousand Dollars ($15,000) per individual, Thirty Thousand Dollars ($30,000) per accident in uninsured motorist coverage.

10. The Defendant has a copy of the policy issued to Charles F. Nagle and is familiar with the contents of it. This policy is incorporated herein by reference.

11. That the aforesaid Allstate policy defines an "uninsured motor vehicle" as including a land motor vehicle of any type to which a bodily injury liability policy applies at the time of the accident but the insuring company denies coverage.

12. That your Petitioner has requested payment of the uninsured motorist coverage on the three vehicles covered by the policy issued to Charles F. Nagle.

13. Damages resulting from the injuries suffered by your Petitioner in the aforesaid collision greatly exceed the total of the uninsured motorist coverage provided by Allstate in the policy issued to Charles F. Nagle.

14. That the Defendant has denied your Petitioner's claim for benefits under the uninsured motorist coverage.

15. That the dispute between the Petitioner and the Defendant comes within the class of disputes, which under the arbitration clause of the contract, must be submitted to arbitration. That on June 22, 1984, counsel for your Petitioner requested the Defendant to appoint an arbitrator in order to resolve the issue.

16. The Defendant has refused to appoint an arbitrator and persists in its refusal to submit the dispute to arbitration.

17. Any party aggrieved by the failure, neglect and refusal of another to perform under a written agreement for arbitration is entitled to petition the Court of Common Pleas for an Order to Show Cause why such arbitration should not proceed in the manner provided for in such agreement.

WHEREFORE, your Petitioner prays your Honorable Court to grant a rule upon the Defendant to show cause why the Petition To Compel Arbitration should not be granted and to grant any additional remedies to which the Plaintiff may be entitled.

Brief for Appellant at 3a–6a.

provided by the insurance contract despite his having entered into settlement without the consent of the uninsured motorist insurer?

Brief for Appellant at 3.

In his memorandum opinion dated March 12, 1986 Judge Eshelman gives us the further facts:

Plaintiff responded by commencing the within action in equity by writ of summons against defendant. Plaintiff then filed a petition to compel arbitration. Defendant alleged in its motion to dismiss plaintiff's petition, which accompanied defendant's answer to the petition, that settlements were entered into by plaintiff with Weller and Tecnad without defendant's consent thereby precluding uninsured motorist coverage under the Uninsured Motorist Act, 40 P.C.S.A. Sec. 2000(e)(2). In plaintiff's answer and new matter in response to defendant's motion to dismiss, plaintiff admitted that he entered into agreements of settlement for one thousand dollars each with Weller and Tecnad after naming them as co-defendants with Shealer in an action of trespass arising from this accident (i.e., No. 127 August 1978, Berks County), and that plaintiff had prosecuted the action in trespass to judgment against Shealer for two hundred thousand dollars. Defendant had neither consented to the action in trespass against Shealer, Weller and Tecnad nor to plaintiff's settlement of claims against Weller and Tecnad.

After argument and consideration of briefs filed, the court denied plaintiff's petition to compel arbitration and granted defendant's motion to dismiss plaintiff's petition. Upon praecipe by plaintiff, judgment was entered in the within action based on the final order entered January 2, 1986. Plaintiff argues that the court committed error by failing to compel arbitration because the insurance contract, which is the basis of this action for uninsured motorist benefits, provides that a disagreement as to the right to receive benefits is to be submitted to arbitration.

Lower ct. op. at 2.

Judge Eshelman then concluded that:

The uninsured motorist benefits coverage required by the Uninsured Motorist Act does not apply to "bodily injury sustained by the insured with respect to which the insured or his representative shall, without the written consent of the insurer, make any settlement with or prosecute to judgment any action against any person who may be legally liable therefor." 40 P.C.S.A. Sec. 2000(e)(2). The Pennsylvania Superior Court has held that this section precludes recovery of uninsured motorist benefits from the insurer if the insured enters into a settlement without the insurer's consent. *Cotton v. Insurance Company of North America*, [344 Pa.Super. 602,] 497 A.2d 254 (1985). Admittedly the *Cotton* case did not involve a request for arbitration but rather a claim under the Pennsylvania Assigned Claims Plan. However, the legal principle involved in *Cotton* is equally applicable to the present case. It is undisputed that the plaintiff entered into settlements with Weller and Tecnad, who may have been legally liable for bodily injuries sustained by plaintiff. "The conclusion is therefore inescapable that [plaintiff's] settlement precluded them from receiving '[t]he coverage required by [the Uninsured Motorist Act].'" *Id.*, 344 Pa.Superior Ct. at 604, 497 A.2d at 255.

By virtue of his settlements with Weller and Tecnad, and prosecution of his claim against Shealer to judgment, plaintiff was precluded from receiving coverage under the uninsured motorist clause of his policy due to 40 P.C.S.A. Sec. 2000(e)(2). Therefore there was no issue to submit to arbitration. Accordingly plaintiff's petition to compel arbitration was properly denied.

Lower ct. op. at 3–4.

In *Cotton v. Insurance Co. of North America*, 344 Pa.Super. 602, 497 A.2d 254 (1985), speaking through former President Judge Spaeth, we said:

This appeal is from an order granting summary judgment. Appellants were uninsured passengers in an uninsured motor vehicle when it collided with an insured

motor vehicle. Upon application to the Pennsylvania Assigned Claims Plan, appellee was designated appellants' assigned obligor. Subsequently, without appellee's knowledge, appellants entered into a settlement agreement with the driver of the insured vehicle. The trial court held that under the Uninsured Motorist Act, 40 P.S. § 2000(e)(2), appellants' settlement precluded their recovery of uninsured motorist benefits from appellee. We agree, and therefore affirm.

The Uninsured Motorist Act provides in part:

(e) The coverage required by this section does not apply:

.    .    .    .    .

(2) To bodily injury sustained by the insured with respect to which the insured or his representative shall, without the written consent of the insurer, make any settlement with or prosecute to judgment any action against any person who may be legally liable therefor. 40 P.S. § 2000(e)(2).

Appellants were to have received uninsured motorist benefits from appellee. Thus appellee was to have provided "[t]he coverage required by this section." It is undisputed that appellants entered into a settlement with an insured driver, *i.e.*, with a "person who may [have been] legally liable" for the "bodily injur[ies] sustained by the insured[s]." The conclusion is therefore inescapable that appellants' settlement precluded them from receiving "[t]he coverage required by [the Uninsured Motorist Act]." *See* 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under pretext of pursuing its spirit."). *See also In re Fox's Estate*, 494 Pa. 584, 431 A.2d 1008 (1981); *Salvado v. Prudential Property and Casualty Insurance Co.*, 287 Pa.Super. 304, 430 A.2d 297 (1981).

Appellants argue that despite the plain words of the statute, they are entitled to receive uninsured motorist coverage because, in their view, the statute is meant to

preclude settlements with uninsured motorists only. Appellants reason that such an interpretation would not prejudice appellee's subrogation rights, and they rely upon cases that have held that only settlements with uninsured motorists are precluded.

In its opinion, the trial court, per DOTY, J., noted that the purpose of section 2000(e)(2) is to protect the subrogation rights of the insurer. We agree and are unable to understand appellants' argument that the construction they urge would not prejudice appellee. If appellee had paid appellants uninsured motorist benefits, it would then have been entitled to seek recovery of the amounts so paid from the drivers involved in the accident. In attempting that recovery it would no doubt have been confronted by the insured motorist's refusal to pay anything more on the ground that as a result of a joint tortfeasor release between him and appellants, he had been "forever discharge[d]" "from any and all actions, causes of action, claims, demands...." arising out of the accident. While it is true that appellee might still have sued the uninsured motorist, we may assume that its chance of recovering from the uninsured motorist would be less than its chance of recovering from the insured motorist.

*Id.,* 344 Pa.Superior Ct. at 603–04, 497 A.2d at 254–55.

■ We agree with Judge Eshelman that *Cotton* [3] controls the instant case. While it appears that appellant's

---

**3.** *See also Littlejohn v. Keystone Insurance Co.,* 353 Pa.Super. 63, 509 A.2d 334 (1986) (insured who entered into a settlement agreement with tortfeasor without written consent of insurer precluded from recovering uninsured motorist benefits).

*Compare Sparler v. Fireman's Insurance Co. of Newark* (J. 75028/85, filed April 8, 1986) involving a suit to recover underinsured coverage benefits and where appellant had previously granted a general release to the tortfeasor. We held that while a general release to a tortfeasor is not so broad as to release the insurer as well, the policy itself contained restrictive language which discharged the insurer's obligation to pay underinsurance benefits.

In this case, however, the release executed by appellant did have an adverse effect on appellant's rights to recover under his policy. Certain restrictive language in appellant's policy rendered the re-

claim for uninsured motorist benefits must ultimately fail, he still contends that the lower court should have referred his claim to arbitration. *Cotton* did not involve a request for arbitration and is thus of little benefit to our determination of whether arbitration should have been compelled.

Appellant's argument seems to be bolstered by our recent decision in *McGinley v. Allstate Insurance Co.*, 352 Pa.Super. 139, 507 A.2d 420 (1986). In that case, the insureds were injured in a motor vehicle accident and wished to make a claim pursuant to the uninsured motorist coverage of their policy with Allstate. They filed a petition for appointment of an arbitrator, which was denied by the lower court. Our court reversed, holding that the lower court's denial of the insured's petition to name an arbitrator was improper following the showing of a valid contract of insurance between the parties which contained an agreement to arbitrate the application or construction of the uninsured motorist clause.

We held in *McGinley* that the question of whether an arbitrator should have been appointed was controlled by 42

lease fatal to appellant's recovery from appellee. This policy was made part of the record below and included in a section (Part 6) entitled "Uninsured (and Underinsured) Motorists." Part 6C stated:
C. **RESTRICTIONS ON YOUR UNINSURED MOTORISTS COVERAGE**
We do not cover:

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;

(a) any person if that person or the legal representative settles the **bodily injury** claim without our written consent.
Appellant in fact did not receive the written consent of the appellee-insurer before settling with the tortfeasor. Thus, the release of the tortfeasor served to excuse the appellee from paying underinsured benefits, as the appellant failed to satisfy the restrictive terms of the policy.
*Id.* at slip op. at 2. We note that the policy in the instant case contained similar language stating that coverage did not apply to any person insured who makes a settlement without the insurer's written consent. R.R. at 35a. However, the decision in *Sparler* is inapposite in any event because the *Sparler* case involved a claim for underinsurance motorist benefits, not uninsured motorist benefits, and thus the provisions of the Uninsured Motorist Act, which control the instant decision, were not applicable in *Sparler*. We note that reargument of *Sparler* before the court *en banc* was granted on June 16, 1986.

Pa.C.S. § 7304.[4] "[Section 7304] is clear. Uninsured motorist claims, if agreement cannot be reached by the parties, must be submitted to statutory arbitration.... When the parties have agreed to resolve all disputes by arbitration, arbitration is the procedure which must be followed." *Id.*, 352 Pa.Superior Ct. at 143, 507 A.2d at 422, *quoting Cunningham v. Prudential*, 340 Pa.Super. 130, 134–35, 489 A.2d 875, 878 (1985).

The arbitration clause in *McGinley* and the arbitration clause in the instant case differ in one important aspect, however. Instantly, the arbitration clause states in pertinent part:

**If We Cannot Agree**

If **we** or **you** don't agree on **your** right to receive any damages or the amount, then upon the written request of either the disagreement will be settled by arbitration. *Arbitration will take place under the rules of the American Arbitration Association unless **we** or **you** object.* Then, **you'll** select one arbitrator and **we** will select another. The two arbitrators will select a third. If they can't agree on a third arbitrator within 30 days, the judge of the court of record in the county of jurisdiction where arbitration is pending will appoint the third arbitra-

---

4. 42 Pa.C.S. § 7304 states in pertinent part:

**§ 7304. Court proceedings to compel or stay arbitration**

(a) **Compelling arbitration.**—On application to a court to compel arbitration made by a party showing an agreement described in section 7303 (relating to validity of agreement to arbitrate) and a showing that an opposing party refused to arbitrate, the court shall order the parties to proceed with arbitration. If the opposing party denies the existence of an agreement to arbitrate, the court shall proceed summarily to determine the issue so raised and shall order the parties to proceed with arbitration if it finds for the moving party. Otherwise, the application shall be denied.

\* \* \* \* \* \*

(e) **No examination of merits.**—An application for a court order to proceed with arbitration shall not be refused, nor shall an application to stay arbitration be granted, by the court on the ground that the controversy lacks merit or bona fides or on the ground that no fault or basis for the controversy sought to be arbitrated has been shown.

tor. **You** will pay the arbitrator **you** select and **we** will pay the one **we** select. The expense of the third arbitrator and all other expenses of arbitration will be shared equally. . . .

R.R. at 36a (emphasis added).

■ As we noted in *Gentile v. Weiss*, 328 Pa.Super. 475, 477 A.2d 544 (1984), if the contract calls for arbitration under the rules of the American Arbitration Association, then the statutory provisions of the Uniform Arbitration Act, including section § 7304, are not applicable.

"The Arbitration Act [42 Pa.C.S. § 7301 *et seq.*] does not apply unless it is expressly or impliedly provided for by the parties and its procedures are followed." *Runewicz v. Keystone Insurance Co.*, 476 Pa. 456, 460, 383 A.2d 189, 191 (1978) (footnote added). Its provisions are applicable "only if the arbitration agreement specifically refers to the Act or there is other evidence, subsequent to the agreement, that the parties expressly or implicitly agreed that it should apply." *Hart v. State Farm Mutual Automobile Insurance Co.*, 288 Pa.Super. 53, 57, 431 A.2d 283, 285 (1981), *overruled on other grounds, White v. Concord Mutual Insurance Co.*, 296 Pa.Super. 171, 442 A.2d 713, *aff'd*, 500 Pa. 103, 454 A.2d 982 (1982). See also: *Gallagher v. Educator and Executive Insurers, Inc.*, 252 Pa.Super. 414, 417, 381 A.2d 986, 987 (1977). Here, neither the agreement to arbitrate nor any subsequent agreement between the parties provided for statutory arbitration. Common law principles, therefore, were applicable. *Campbell-Ellsworth, Inc. v. Holy Trinity Serbian Orthodox Church-School Congregation*, 233 Pa. Super. 126, 336 A.2d 346 (1975). Moreover, the parties in the instant case agreed that the arbitration was to be held according to rules of the American Arbitration Association; and they agreed to be bound by the result. This "constitutes failure to follow the procedures of the Arbitration Act and [is], therefore, inconsistent with it so as to be sufficient in itself to make the arbitration at common-

law." *Runewicz v. Keystone Insurance Insurance Co.,*
*supra,* 476 Pa. at 461, 383 A.2d at 191.

*Id.,* 328 Pa.Superior Ct. at 479, 477 A.2d at 545–46.

Therefore, the provisions of section 7304 are not applicable to the instant agreement.

■ Nonetheless, it appears that despite appellant's inability to recover uninsured motorist benefits due to *Cotton, supra,* we are constrained to hold that the matter should have proceeded to arbitration pursuant to appellant's request. The insurance contract between the parties plainly required that disputes over uninsured motorist coverage be submitted to arbitration. The parties clearly had a dispute over whether appellant was entitled to such benefits. Therefore, in accordance with the policy language, arbitration became compulsory at the request of either party.

■ Even though this is a case involving common law arbitration, making *McGinley, supra,* nondispositive, there is a long line of caselaw holding that even in dealing with common law arbitration, questions concerning the application or construction of the uninsured motorist clause fall within the exclusive jurisdiction of the arbitrators. *See, e.g., Runewicz v. Keystone Insurance Co.,* 476 Pa. 456, 383 A.2d 189 (1978) (broad power of arbitrators has been repeatedly recognized in uninsured motorist cases, and their decision is final as to whether conditions precedent for coverage have been complied with, whether claim is barred by statute of limitations, whether injured party is included among those covered, and whether motorist is in fact uninsured); *Borough of Ambridge Water Authority v. J.Z. Columbia,* 458 Pa. 546, 328 A.2d 498 (1974) (same); *Allstate Insurance Co. v. McMongale,* 449 Pa. 362, 296 A.2d 738 (1972) (issue of whether policy which provided for arbitration of disputes arising under uninsured motorist coverage was in force on day of accident was itself subject to arbitration under such provisions); *Harleysville Mutual Insurance Co. v. Medycki,* 431 Pa. 67, 244 A.2d 655 (1968) (dispute over whether insured has forfeited his right to coverage because of non-compliance with provisions of poli-

cy is a matter for arbitration); *National Grange Mutual Insurance Co. v. Kuhn*, 428 Pa. 179, 236 A.2d 758 (1968) (all disputes arising under uninsured motorist coverage are covered by arbitration agreement and should be determined by arbitration); *White v. Concord Mutual Insurance Co.*, 296 Pa.Super. 171, 442 A.2d 713 (1982), *aff'd*, 500 Pa. 103, 454 A.2d 982 (1982) (questions under uninsured motorist clause with an arbitration provision are within exclusive jurisdiction of arbitrators); *Reinhart v. State Automobile Insurance Association*, 242 Pa.Super. 18, 363 A.2d 1138 (1976) (same); *Webb v. United Services Automobile Association*, 227 Pa.Super. 508, 323 A.2d 737 (1974) (same). Accordingly, we reverse the order of the court below.

Order reversed and case remanded for proceedings consistent with this opinion. Jurisdiction is relinquished.